SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 24 2015

Sherri R. Carter, Executive Officer/Clerk
By Darnetta Smith, Deputy

**NOTICE TO DEFENDANT:** 1169 HILLCREST, LLC, a Nevada limited
***(AVISO AL DEMANDADO):*** liability company; NAM2 LLC, a Nevada limited liability company; and DOES 1 through 25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:** SKYVIEW CAPITAL, LLC
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):*** a Delaware limited liability company

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Los Angeles County Superior Court - West District
Santa Monica Courthouse, 1725 Main Street
Santa Monica, California 90401

CASE NUMBER:
*(Número del Caso):*
SC123947

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
ANDREW S. PAULY (SBN 90145) / DAMON A. THAYER (SBN 258821) Tel: (310) 451-8001 Fax: (310) 395-5961
GREENWALD, PAULY & MILLER, A Professional Corporation
1299 Ocean Avenue, Suite 400, Santa Monica, California 90401-1007

DATE: MAR 24 2015 Sherri R. Carter Clerk, by D Smith, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]
Sherri R. Carter, Clerk

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:
3. [XX] on behalf of *(specify)*: NAM2 LLC

under:
- [ ] CCP 416.10 (corporation)
- [ ] CCP 416.20 (defunct corporation)
- [ ] CCP 416.40 (association or partnership)
- [ ] CCP 416.60 (minor)
- [ ] CCP 416.70 (conservatee)
- [ ] CCP 416.90 (authorized person)
- [XX] other *(specify)*: limited liability company

4. [ ] by personal delivery on *(date)*:

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions

Code of Civil Procedure §§ 412.20, 465

COPY

Greenwald, Pauly, & Miller A Professional Corporation

GREENWALD, PAULY & MILLER,
A Professional Corporation
ANDREW S. PAULY (SBN 90145)
DAMON A. THAYER (SBN 258821)
1299 Ocean Avenue, Suite 400
Santa Monica, California 90401-1007
Telephone: (310) 451-8001
Facsimile: (310) 395-5961
apauly@gpfm.com
dthayer@gpfm.com

Attorneys for Plaintiff
SKYVIEW CAPITAL, LLC

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 24 2015

Sherri R. Carter, Executive Officer/Clerk
By Darnetta Smith, Deputy

CASE MANAGEMENT CONFERENCE

JUL 13 2015 Judge C. Karlan
Date Dept N @ 8:30am

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

**WEST DISTRICT**

SKYVIEW CAPITAL, LLC, a Delaware limited liability company,

Plaintiff,

v.

1169 HILLCREST, LLC, a Nevada limited liability company; NAM2 LLC, a Nevada limited liability company; and DOES 1 through 25, inclusive,

Defendants.

Case No. SC123947

**VERIFIED COMPLAINT FOR:**

1. **SPECIFIC PERFORMANCE FOR PURCHASE OF REAL PROPERTY; AND**
2. **DAMAGES FOR BREACH OF WRITTEN CONTRACT**

Greenwald, Pauly, & Miller A Professional Corporation

Plaintiff Skyview Capital, LLC alleges:

**The Parties**

1. Plaintiff Skyview Capital, LLC ("Skyview") is a Delaware limited liability company authorized to do business and doing business in California.

2. Defendant 1169 Hillcrest, LLC ("1169 Hillcrest") is a Nevada limited liability company that currently owns the real property that is the subject of this action located in Beverly Hills, California and is doing business in the County of Los Angeles, State of California.

3. Defendant NAM2 LLC ("NAM2") is a Nevada limited liability company doing business in the County of Los Angeles, State of California. Skyview is informed and believes and based thereon alleges that NAM2 is the sole member of 1169 Hillcrest.

4. The true names and capacities of defendants sued as Does 1 through 25, inclusive, are unknown to Skyview, and as such Skyview sues those defendants by such fictitious names. Skyview will seek leave to amend this Complaint to set forth their true names and capacities when they have been ascertained.

**Venue and Non-Waiver of Mediation and Arbitration**

5. This Complaint concerns real property located in Beverly Hills, California, and therefore venue is proper in this County and in this judicial district. Skyview is filing this Complaint to enable the recording of a Notice of Pending Action and does not waive the right to mediation and arbitration provided under Paragraph 28 of the Purchase Agreement described below. The Purchase Agreement at Paragraph 28C(2) expressly provides for the filing of a court action for purposes of recording such a notice without waiver or violation of the mediation and arbitration provisions. Skyview is prepared to stipulate with defendants that this action be stayed pending the outcome of the contractual mediation and arbitration.

**The Purchase Agreement**

6. Defendant 1169 Hillcrest is the fee owner of unimproved land commonly known as 1169 North Hillcrest Road, Beverly Hills, California 90210 (the "Property"). The legal description of the Property is:

Greenwald, Pauly & Miller A Professional Corporation

LOT 96 OF TRACT NO. 21360, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 587, PAGES 59 TO 63 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 4391-028-015

7. On or about February 13, 2015, Skyview and defendants entered into the Vacant Land Purchase Agreement and Joint Escrow Instructions (the "Purchase Agreement"), a true copy of which is attached hereto as Exhibit "1." On or about February 17, 2015, Skyview and defendants entered into an Acknowledgement of California Residential Purchase Agreement and Joint Escrow Instructions (the "Escrow Instructions"), a true copy of which is attached hereto as Exhibit "2."

8. On or about March 2, 2015, Skyview and defendants entered into Addendum No. 1 to the Purchase Agreement, a true copy of which is attached hereto as Exhibit "3."

9. On or about March 2, 2015, Skyview executed and delivered to defendants its Contingency Removal No. One, a true copy of which is attached hereto as Exhibit "4."

10. On or about March 4, 2015, Skyview and defendants entered into an Amendment to the Escrow Instructions, a true copy of which is attached hereto as Exhibit "5."

11. The Purchase Agreement as amended and the Escrow Instructions as amended are collectively referred to as the "Purchase Documents."

12. In accordance with the Purchase Documents, Skyview's deposit of $665,400.00 has already been released to defendants.

**The Breach**

13. Under the Purchase Documents, escrow is scheduled to close by April 6, 2015.

14. Defendants have not supplied escrow with the required documents to timely close the sale of the Property. Moreover, escrow informed Skyview on or about March 19, 2015 that there exists a Notice of *Lis Pendens* recorded against the Property arising from a Federal court lawsuit against defendant 1169 Hillcrest by an alleged third party.

15. Skyview demanded assurances from defendants that they would timely close

Greenwald, Pauly & Miller A Professional Corporation

the transaction and deliver marketable title to Skyview, including removal of the Notice of *Lis Pendens*.

16. Defendants repudiated and breached the Purchase Documents by failing to provide Skyview with adequate written assurances that they would deliver marketable title to Skyview and disclaiming any obligation to do so.

17. Defendants have not cured their repudiation and/or breaches of the Purchase Documents.

**FIRST CAUSE OF ACTION**

**(Specific Performance of Written Purchase Agreement Against All Defendants)**

18. Skyview realleges and incorporates by reference Paragraphs 1 through 17 above.

19. As set forth in more detail above, Skyview and defendants are parties to the written Purchase Documents concerning the Property. The Purchase Documents constitute a valid contract for which defendants received adequate consideration. The Purchase Documents' terms were and are just and reasonable. The Purchase Documents' terms are sufficiently certain, such that the precise acts required to be performed by defendants are clearly ascertainable.

20. Skyview performed each and all of its conditions, covenants, and obligations required to date under the Purchase Documents, and is ready, willing and able to consummate the purchase transaction.

21. Skyview has demanded that defendants perform their obligations under the Purchase Documents, but defendants failed and refused to do so. Defendants therefore breached the Purchase Documents and repudiated their obligations to sell the Property to Skyview. Defendants' breach is material.

22. The Property is unique and there is no adequate remedy at law for the enforcement of the terms of the Purchase Documents. Defendants cannot adequately compensate Skyview for the damage caused by their failure and refusal to perform their contractual obligations, including their obligation to transfer the Property to Skyview and

Greenwald, Pauly & Miller A Professional Corporation

otherwise sell the Property to Skyview.

23. Based on these facts, Skyview requests that this Court order defendants to specifically perform under the Purchase Documents and, subject to the terms thereof, deliver possession of the Property to Skyview and otherwise transfer the Property to Skyview free and clear of any Notice of *Lis Pendens* or other clouds on marketable title.

24. Due to defendants' breaches and delay in performance, Skyview has suffered and will continue to suffer incidental and consequential damages including, but not limited to, lost profits and damages stemming from its inability to own, develop and/or sell the Property.

25. Due to defendants' breaches of the Purchase Documents, Skyview has been forced to retain attorneys to represent it and has incurred, and will continue to incur, attorneys' fees and costs. Pursuant to the Purchase Documents, Skyview seeks an award of its attorneys' fees and costs incurred in connection with defendants' breach.

**SECOND CAUSE OF ACTION**

**(Breach of Written Purchase Agreement Against All Defendants)**

26. Skyview realleges and incorporates by reference Paragraphs 1 through 21 above.

27. Skyview performed each and all of the conditions, covenants, and obligations required on its part under the Purchase Documents.

28. The Purchase Documents provide that defendants shall sell the Property to Skyview. There is no basis in the Purchase Documents, including any condition precedent or contingency, which would permit defendants to refuse to sell the Property to Skyview. Nevertheless, defendants have not performed under the Purchase Documents and will not sell the Property to Skyview. Defendants have therefore anticipatorily and otherwise breached the Purchase Documents.

29. As a direct and proximate result of defendants' breaches of the Purchase Documents, Skyview has suffered damages within this Court's jurisdiction, according to proof at trial.

Greenwald, Pauly & Miller A Professional Corporation

30. Due to defendants' breach of the Purchase Documents, Skyview has been forced to retain attorneys to represent it and has incurred, and will continue to incur, attorneys' fees and costs. Pursuant to the Purchase Documents, Skyview therefore seeks an award of its attorneys' fees and costs incurred in connection with defendants' breach.

**RELIEF REQUESTED**

**WHEREFORE**, plaintiff Skyview Capital, LLC respectfully requests that judgment be entered in its favor and against defendants 1169 Hillcrest, LLC, a Nevada limited liability company; NAM2 LLC, a Nevada limited liability company; and DOES 1 through 25, inclusive, as follows:

1. On the First Cause of Action, for a judgment (a) decreeing that defendants 1169 Hillcrest and NAM2 shall specifically perform the Purchase Documents by selling the Property to Skyview free and clear of any Notice of *Lis Pendens* and otherwise enforcing the terms of the Purchase Documents, and (b) awarding Skyview all available damages arising from or relating to Skyview's claim for specific performance;

2. On the Second Cause of Action, for all damages arising from or relating to Skyview's claim for breach of the Purchase Documents;

3. For recoverable interest;

4. For attorneys' fees and costs as allowed by contract, statute, or law and that such sums be applied to the price payable under the Purchase Documents; and

5. For such other and further relief as this Court deems just and proper.

DATED: March 24, 2015.

GREENWALD, PAULY & MILLER,
A Professional Corporation

ANDREW S. PAULY
DAMON A. THAYER

By: [signature]
ANDREW S. PAULY
Attorneys for Plaintiff
SKYVIEW CAPITAL, LLC

Greenwald, Pauly & Miller
A Professional Corporation

## VERIFICATION

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I have read the foregoing **VERIFIED COMPLAINT** and know its contents.

☐ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief and, as to those matters, I believe them to be true.

☒ I am Executive Vice President and Chief Financial Officer of Skyview Capital, LLC, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☒ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for ____________________, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on March 23, 2015, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

CHRISTOPHER AYE
Type or Print Name

Signature

DocuSign Envelope ID: BD4B2C5C-4E35-45B1-8DE7-262A2F955732

CALIFORNIA
ASSOCIATION
OF REALTORS®

# VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

(C.A.R. Form VLPA, Revised 11/14)

Date Prepared: *January 5, 2015*

1. OFFER:
   A. THIS IS AN OFFER FROM *Skyview Capital LLC or Assigne, or any affiliated entities* ("Buyer").
   B. THE REAL PROPERTY to be acquired is *1169 N Hillcrest Rd*, situated in *Los Angeles* (City), *Beverly Hills* County, California, *90210* (Zip Code), Assessor's Parcel No. *4391-028-015* ("Property").
   C. THE PURCHASE PRICE offered is *Twenty-Two Million* Dollars $ *22,000,000.00*.
   D. CLOSE OF ESCROW shall occur on *March 13, 2015* (date)(or ______ Days After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.
2. AGENCY:
   A. DISCLOSURE: The Parties each acknowledge receipt of a ☑ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. CONFIRMATION: The following agency relationships are hereby confirmed for this transaction:
   Listing Agent *Hilton and Hyland* (Print Firm Name) is the agent of (check one): ☐ the Seller exclusively; or ☒ both the Buyer and Seller.
   Selling Agent *Hilton and Hyland* (Print Firm Name) (if not the same as the Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
   C. POTENTIALLY COMPETING BUYERS AND SELLERS: The Parties each acknowledge receipt of a ☑ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
3. FINANCE TERMS: Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Deposit shall be in the amount of . . . . . . . . . . $ *660,000.00*
   (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, ☐ cashier's check, ☐ personal check, ☐ other ______ within 3 business days after Acceptance (or ______);
   OR (2) ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or ______) to the agent submitting the offer (or to ______), made payable to ______. The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within 3 business days after Acceptance (or ______). Deposit checks given to agent shall be an original signed check and not a copy.
   (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . $ ______ within ____ Days After Acceptance (or ______).
   If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.
   C. ☐ ALL CASH OFFER: No loan is needed to purchase the Property. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or ☐ Buyer shall, within 3 (or ______) Days After Acceptance, Deliver to Seller such verification.
   D. LOAN(S):
   (1) FIRST LOAN: in the amount of . . . . . . . . . . $ ______
   This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ subject to financing, ☐ Other ______. This loan shall be at a fixed rate not to exceed ______ % or, ☐ an adjustable rate loan with initial rate not to exceed ______ %. Regardless of the type of loan, Buyer shall pay points not to exceed ______ % of the loan amount.
   (2) ☐ SECOND LOAN in the amount of . . . . . . . . . . $ ______
   This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ subject to financing ☐ Other ______. This loan shall be at a fixed rate not to exceed ______ % or, ☐ an adjustable rate loan with initial rate not to exceed ______ %. Regardless of the type of loan, Buyer shall pay points not to exceed ______ % of the loan amount.
   (3) FHA/VA: For any FHA or VA loan specified in 3D(1), Buyer has 17 (or ___) Days After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this transaction.
   E. ADDITIONAL FINANCING TERMS: *Buyer reserves the right to obtain a loan a Buyers sole discretion. This is not a contingency.*

Buyer's Initials ( DS [initials] ) ( ______ )  Seller's Initials ( DS [initials] ) ( ______ )

© 1996-2014, California Association of REALTORS®, Inc.

Hilton & Hyland 250 North Canon Drive Beverly Hills, CA 90210 Phone: (310)925-9281 Fax: (310) 388-4638 1169 N Hillcre
Rayni Romito Williams Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

DocuSign Envelope ID: BD4B2C5C-4E35-45B1-8DE7-262A2F955732

Property Address: *1169 N Hillcrest Rd, Los Angeles, CA 90210* Date: *January 5, 2015*

F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE in the amount of . . . . . . . . . . . . . . . . . . . . . . $ *21,340,000.00* to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

G. PURCHASE PRICE (TOTAL): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ *22,000,000.00*

H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within 3 (or ___ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

I. APPRAISAL CONTINGENCY AND REMOVAL: This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 19B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or ___ ) Days After Acceptance.

J. LOAN TERMS:

(1) LOAN APPLICATIONS: Within 3 (or ___ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

(2) LOAN CONTINGENCY: Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above is a contingency of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

(3) LOAN CONTINGENCY REMOVAL:
Within 21 (or ___ ) Days After Acceptance, Buyer shall, as specified in paragraph 19, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(4) ☒ NO LOAN CONTINGENCY: Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

(5) LENDER LIMITS ON BUYER CREDITS: Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

K. BUYER STATED FINANCING: Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

L. SELLER FINANCING: The following terms (or ☐ the terms specified in the attached Seller Financing Addendum) (C.A.R. Form SFA) apply ONLY to financing extended by Seller under this Agreement.

(1) BUYER'S CREDIT-WORTHINESS: Buyer authorizes Seller and/or Brokers to obtain, at Buyer's expense, a copy of Buyer's credit report. Within 7 (or ☐ ________ ) Days After Acceptance, Buyer shall provide any supporting documentation reasonably requested by Seller.

(2) TERMS: Buyer's promissory note, deed of trust and other documents as appropriate shall incorporate and implement the following additional terms: (i) the maximum interest rate specified in paragraph 3D shall be the actual fixed interest rate for Seller financing; (ii) deed of trust shall contain a REQUEST FOR NOTICE OF DEFAULT on senior loans; (iii) Buyer shall sign and pay for a REQUEST FOR NOTICE OF DELINQUENCY prior to Close Of Escrow and at any future time if requested by Seller; (iv) note and deed of trust shall contain an acceleration clause making the loan due, when permitted by law and at Seller's option, upon the sale or transfer of the Property or any interest in it; (v) note shall contain a late charge of 6% of the installment due (or ☐ ________ ) if the installment is not received within 10 days of the date due; (vi) title insurance coverage in the form of a joint protection policy shall be provided insuring Seller's deed of trust interest in the Property (any increased cost over owner's policy shall be paid by Buyer); and (vii) tax service shall be obtained and paid for by Buyer to notify Seller if property taxes have not been paid.

(3) ADDED, DELETED OR SUBSTITUTED BUYERS: The addition, deletion or substitution of any person or entity under this Agreement or to title prior to Close Of Escrow shall require Seller's written consent. Seller may grant or withhold consent in Seller's sole discretion. Any additional or substituted person or entity shall, if requested by Seller, submit to Seller the same documentation as required for the original named Buyer. Seller and/or Brokers may obtain a credit report, at Buyer's expense, on any such person or entity.

M. ASSUMED OR "SUBJECT TO" FINANCING: Seller represents that Seller is not delinquent on any payments due on any loans. Seller shall, within the time specified in paragraph 19, provide Copies of all applicable notes and deeds of trust, loan balances and current interest rates to Buyer. Buyer shall then, as specified in paragraph 19B(3), remove this contingency or cancel this Agreement. Differences between estimated and actual loan balances shall be adjusted at Close Of Escrow by cash down payment. Impound accounts, if any, shall be assigned and charged to Buyer and credited to Seller. Seller is advised that Buyer's assumption of an existing loan may not release Seller from liability on that loan. If this is an assumption of a VA Loan, the sale is contingent upon Seller being provided a release of liability and substitution of eligibility, unless otherwise agreed in writing. If the Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal counsel regarding the ability of an existing lender to call the loan due, and the consequences thereof.

Buyer's Initials ( ________ ) ( ________ ) Seller's Initials ( MM ) ( ________ )

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com 1169 N Hillcre

EQUAL HOUSING OPPORTUNITY

Property Address: *1169 N Hillcrest Rd, Los Angeles, CA 90210* Date: *January 5, 2015*

4. SALE OF BUYER'S PROPERTY:
   A. This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
   OR B. ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).
5. ☐ MANUFACTURED HOME PURCHASE: The purchase of the Property is contingent upon Buyer acquiring a personal property manufactured home to be placed on the Property after Close Of Escrow. Buyer ☐ has ☐ has not entered into a contract for the purchase of a personal property manufactured home. Within the time specified in paragraph 19, Buyer shall remove this contingency or cancel this Agreement, (OR, ☐ this contingency shall remain in effect until the Close Of Escrow of the Property).
6. ☐ CONSTRUCTION LOAN FINANCING: The purchase of the Property is contingent upon Buyer obtaining a construction loan. A draw from the construction loan ☐ will ☐ will not be used to finance the Property. Within the time specified in paragraph 19, Buyer shall remove this contingency or cancel this Agreement (or ☐ this contingency shall remain in effect until Close Of Escrow of the Property).
7. ADDENDA AND ADVISORIES:

A. ADDENDA:

| | |
|---|---|
| | ☐ Addendum # (C.A.R. Form ADM) |
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☒ Other *Single party compensation agreement* |

B. BUYER AND SELLER ADVISORIES:

| | |
|---|---|
| | ☑ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Probate Advisory (C.A.R. Form PAK) | ☒ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other |

8. OTHER TERMS: *Initial deposit shall become a non-refundable release to the Seller upon removal of all contingencies. All Buyer contingencies to be removed within 14 days from acceptance.*
9. ALLOCATION OF COSTS
   A. INSPECTIONS, REPORTS AND CERTIFICATES: Unless otherwise agreed, in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; **it does not determine who is to pay for any work recommended or identified in the Report.**
   (1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☒ Other: *Clue* prepared by *Property ID*.
   (2) ☐ Buyer ☐ Seller shall pay for the following Report ______ prepared by ______.
   (3) ☐ Buyer ☐ Seller shall pay for the following Report ______ prepared by ______.
   B. ESCROW AND TITLE:
   (1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *Each shall pay their own fees 50/50 as customary.*
   (b) Escrow Holder shall be *Seller's choice.*
   (c) The Parties shall, within 5 (or ___ ) Days After receipt, sign and return Escrow Holder's general provisions.
   (2) (a) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 18E ______.
   (b) Owner's title policy to be issued by *Loren Goldman, First American Title.*
   (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)
   C. OTHER COSTS:
   (1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee ______.
   (2) ☐ Buyer ☐ Seller shall pay City transfer tax or fee ______.
   (3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee ______.
   (4) Seller shall pay HOA fees for preparing all documents required to be delivered by Civil Code §4525.
   (5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
   (6) ☐ Buyer ☐ Seller shall pay for any private transfer fee ______.
   (7) ☐ Buyer ☐ Seller shall pay for ______.
   (8) ☐ Buyer ☐ Seller shall pay for ______.
10. CLOSING AND POSSESSION: Possession shall be delivered to Buyer: (i) at 6 PM or ( *12* ☐ AM/ ☒ PM) on the date of Close Of Escrow; (ii) ☐ no later than ___ calendar days After Close Of Escrow; or (iii) ☐ at ___ ☐ AM/ ☐ PM on ______. The Property shall be unoccupied, unless otherwise agreed in writing. Seller shall provide keys and/or means to operate all Property locks. If Property is located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.
11. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:
    A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 11B or C.

Buyer's Initials ( DS [initials] ) ( ______ ) Seller's Initials ( DS MM ) ( ______ )

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com 1169 N Hillcre

EQUAL HOUSING OPPORTUNITY

Property Address: *1169 N Hillcrest Rd, Los Angeles, CA 90210* Date: *January 5, 2015*

B. ITEMS INCLUDED IN SALE:
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) The following items: *Any and all plans and permits, reports and renderingings in Seller's possession.*
(3) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
(4) All items included shall be transferred free of liens and without Seller warranty.
C. ITEMS EXCLUDED FROM SALE: ____________

12. STATUTORY DISCLOSURES AND CANCELLATION RIGHTS:
A. NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS: Within the time specified in paragraph 19A, Seller shall, if required by Law: (i) Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet; (ii) disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.
B. WITHHOLDING TAXES: Within the time specified in paragraph 19A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).
C. MEGAN'S LAW DATABASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)
D. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES: This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.
E. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:
(1) SELLER HAS: 7 (or ___) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or SSD).
(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or ___) Days After Acceptance to request from the HOA (C.A.R. Form HOA1): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 19B(3). The Party specified in paragraph 9, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

13. SELLER DOCUMENTATION AND ADDITIONAL DISCLOSURE:
A. Within the time specified in paragraph 19, if Seller has actual knowledge, Seller shall provide to Buyer, in writing, the following information:
(1) LEGAL PROCEEDINGS: Any lawsuits by or against Seller, threatening or affecting the Property, including any lawsuits alleging a defect or deficiency in the Property or common areas, or any known notices of abatement or citations filed or issued against the Property.
(2) AGRICULTURAL USE: Whether the Property is subject to restrictions for agricultural use pursuant to the Williamson Act (Government Code §§51200-51295).
(3) DEED RESTRICTIONS: Any deed restrictions or obligations.
(4) FARM USE: Whether the Property is in, or adjacent to, an area with Right to Farm rights (Civil Code §3482.5 and §3482.6).
(5) ENDANGERED SPECIES: Presence of endangered, threatened, 'candidate' species, or wetlands on the Property.
(6) ENVIRONMENTAL HAZARDS: Any substances, materials, or products that may be an environmental hazard including, but not limited to, asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical storage tanks, and contaminated soil or water on the Property.
(7) COMMON WALLS: Any features of the Property shared in common with adjoining landowners, such as walls, fences, roads, and driveways, and agriculture and domestic wells whose use or responsibility for maintenance may have an effect on the Property.
(8) LANDLOCKED: The absence of legal or physical access to the Property.
(9) EASEMENTS/ENCROACHMENTS: Any encroachments, easements or similar matters that may affect the Property.
(10) SOIL FILL: Any fill (compacted or otherwise), or abandoned mining operations on the Property.
(11) SOIL PROBLEMS: Any slippage, sliding, flooding, drainage, grading, or other soil problems.
(12) EARTHQUAKE DAMAGE: Major damage to the Property or any of the structures from fire, earthquake, floods, or landslides.
(13) ZONING ISSUES: Any zoning violations, non-conforming uses, or violations of "setback" requirements.
(14) NEIGHBORHOOD PROBLEMS: Any neighborhood noise problems, or other nuisances.
B. RENTAL AND SERVICE AGREEMENTS: Within the time specified in paragraph 19, Seller shall make available to Buyer for inspection and review, all current leases, rental agreements, service contracts and other related agreements, licenses, and permits pertaining to the operation or use of the Property.
C. TENANT ESTOPPEL CERTIFICATES: Within the time specified in paragraph 19, Seller shall deliver to Buyer tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: (i) that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit.

Buyer's Initials ( DS ) ( ______ ) Seller's Initials ( DS MM ) ( ______ )

DocuSign Envelope ID: BD4B2C5C-4E35-45B1-8DE7-262A2F955732

Property Address: *1169 N Hillcrest Rd, Los Angeles, CA 90210* Date: *January 5, 2015*

D. **MELLO-ROOS TAX; 1915 BOND ACT:** Within the time specified in paragraph 19, Seller shall: **(i)** make a good faith effort to obtain a notice from any local agencies that levy a special tax or assessment on the Property (or, if allowed, substantially equivalent notice), pursuant to the Mello-Roos Community Facilities Act, and Improvement Bond Act of 1915, and **(ii)** promptly deliver to Buyer any such notice obtained.

E. Seller shall, within the time specified in paragraph 19, complete and provide Buyer with a Seller Vacant Land Questionnaire (C.A.R. Form VLQ).

14. **SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.**

15. **CHANGES DURING ESCROW:**

A. Prior to Close Of Escrow, Seller may engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 19: **(i)** rent or lease any part of the premises; **(ii)** alter, modify or extend any existing rental or lease agreement; **(iii)** enter into, alter, modify or extend any service contract(s); or **(iv)** change the status of the condition of the Property.

B. At least 7 (or ☐ ___) Days prior to any Proposed Changes, Seller shall give written notice to Buyer of such Proposed Changes.

16. **CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

A. Seller shall, within the time specified in paragraph 19A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

B. Buyer has the right to conduct Buyer Investigations of the property and, as specified in paragraph 19B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

C. **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

17. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 19B. Within the time specified in paragraph 19B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: **(i)** inspect for lead-based paint and other lead-based paint hazards; **(ii)** inspect for wood destroying pests and organisms; **(iii)** review the registered sex offender database; **(iv)** confirm the insurability of Buyer and the Property; and **(v)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

B. Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 19B, complete Buyer Investigations and, either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

C. **Buyer indemnity and Seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs of Buyer's Investigations. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination or cancellation of this Agreement and Close Of Escrow.

D. BUYER IS STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY AND ALL MATTERS AFFECTING THE VALUE OR DESIRABILITY OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO, THE ITEMS SPECIFIED BELOW. IF BUYER DOES NOT EXERCISE THESE RIGHTS, BUYER IS ACTING AGAINST THE ADVICE OF BROKERS. BUYER UNDERSTANDS THAT ALTHOUGH CONDITIONS ARE OFTEN DIFFICULT TO LOCATE AND DISCOVER, ALL REAL PROPERTY CONTAINS CONDITIONS THAT ARE NOT READILY APPARENT AND THAT MAY AFFECT THE VALUE OR DESIRABILITY OF THE PROPERTY. BUYER AND SELLER ARE AWARE THAT BROKERS DO NOT GUARANTEE, AND IN NO WAY ASSUME RESPONSIBILITY FOR, THE CONDITION OF THE PROPERTY. BROKERS HAVE NOT AND WILL NOT VERIFY ANY OF THE ITEMS IN THIS PARAGRAPH 17, UNLESS OTHERWISE AGREED IN WRITING.

E. SIZE, LINES, ACCESS AND BOUNDARIES: Lot size, property lines, legal or physical access and boundaries including features of the Property shared in common with adjoining landowners, such as walls, fences, roads and driveways, whose use or responsibility for maintenance may have an effect on the Property and any encroachments, easements or similar matters that may affect the Property. (Fences, hedges, walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. Property lines may be verified by survey.) (Unless otherwise specified in writing, any numerical statements by Brokers regarding lot size are APPROXIMATIONS ONLY, which have not been and will not be verified, and should not be relied upon by Buyer.)

F. **ZONING AND LAND USE:** Past, present, or proposed laws, ordinances, referendums, initiatives, votes, applications and permits affecting the current use of the Property, future development, zoning, building, size, governmental permits and inspections. Any zoning violations, non-conforming uses, or violations of "setback" requirements. (Buyer should also investigate whether these matters affect Buyer's intended use of the Property.)

Buyer's Initials ( ZD ) ( ________ ) Seller's Initials ( MM ) ( ________ )

VLPA REVISED 11/14 (PAGE 5 OF 11) VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 5 OF 11)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com 1169 N Hillcre

DocuSign Envelope ID: BD4B2C5C-4E35-45B1-8DE7-262A2F955732

Property Address: *1169 N Hillcrest Rd, Los Angeles, CA 90210* Date: *January 5, 2015*

G. **UTILITIES AND SERVICES:** Availability, costs, restrictions and location of utilities and services, including but not limited to, sewerage, sanitation, septic and leach lines, water, electricity, gas, telephone, cable TV and drainage.

H. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel, oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, including mold (airborne, toxic or otherwise), fungus or similar contaminant, materials, products or conditions.

I. **GEOLOGIC CONDITIONS:** Geologic/seismic conditions, soil and terrain stability, suitability and drainage including any slippage, sliding, flooding, drainage, grading, fill (compacted or otherwise), or other soil problems.

J. **NATURAL HAZARD ZONE:** Special Flood Hazard Areas, Potential Flooding (Inundation) Areas, Very High Fire Hazard Zones, State Fire Responsibility Areas, Earthquake Fault Zones, Seismic Hazard Zones, or any other zone for which disclosure is required by Law.

K. **PROPERTY DAMAGE:** Major damage to the Property or any of the structures or non-structural systems and components and any personal property included in the sale from fire, earthquake, floods, landslides or other causes.

L. **NEIGHBORHOOD, AREA AND PROPERTY CONDITIONS:** Neighborhood or area conditions, including Agricultural Use Restrictions pursuant to the Williamson Act (Government Code §§51200-51295), Right To Farm Laws (Civil Code §3482.5 and §3482.6), schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, abandoned mining operations on the Property, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

M. **COMMON INTEREST SUBDIVISIONS: OWNER ASSOCIATIONS:** Facilities and condition of common areas (facilities such as pools, tennis courts, walkways, or other areas co-owned in undivided interest with others), Owners' Association that has any authority over the subject property, CC&Rs, or other deed restrictions or obligations, and possible lack of compliance with any Owners' Association requirements.

N. **SPECIAL TAX:** Any local agencies that levy a special tax on the Property pursuant to the Mello-Roos Community Facilities Act or Improvement Bond Act of 1915.

O. **RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants and the right of a landlord to terminate a tenancy.

P. **MANUFACTURED HOME PLACEMENT:** Conditions that may affect the ability to place and use a manufactured home on the Property.

**18. TITLE AND VESTING:**

A. Within the time specified in paragraph 19, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 19B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

C. Within the time specified in paragraph 19A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

E. Buyer shall receive a "CLTA/ALTA Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and shall pay any increase in cost.

**19. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

A. **SELLER HAS:** 7 (or ___ ) Days After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 3M, 7A, 8, 9, 12A, B, and E, 13, 16A and 18A. Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement if Seller has not Delivered the items within the time specified.

B. (1) **BUYER HAS:** 17 (or *14* ) Days After Acceptance, unless otherwise agreed in writing, to:
(i) complete all Buyer Investigations; review all disclosures, reports, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory Disclosures and other disclosures Delivered by Seller in accordance with paragraph 12A.

(2) Within the time specified in paragraph 19B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

Buyer's Initials ( ______ ) ( ______ ) Seller's Initials ( ______ ) ( ______ )
VLPA REVISED 11/14 (PAGE 6 OF 11)
VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 6 OF 11)
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com 1169 N Hillcre

DocuSign Envelope ID: BD4B2C5C-4E35-45B1-8DE7-262A2F955732

Property Address: *1169 N Hillcrest Rd, Los Angeles, CA 90210* Date: *January 5, 2015*

(3) By the end of the time specified in paragraph 19B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 19A, then Buyer has 5 (or ___ ) Days After Delivery of any such items, or the time specified in paragraph 19B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

(4) **Continuation of Contingency:** Even after the end of the time specified in paragraph 19B(1) and before Seller cancels, if at all, pursuant to paragraph 19C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 19C(1).

C. **SELLER RIGHT TO CANCEL:**

(1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following actions (i) Deposit funds as required by paragraph 3A or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification as required by paragraph 3C or 3H or if Seller reasonably disapproves of the verification provided by paragraph 3C or 3H; (v) Return Statutory Disclosures as required by paragraph 12A; or (vi) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 27B; or (vii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

D. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2(or ___ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 19.

E. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

F. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 (or ______ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow.

G. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **Except as specified below, release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel, one Party may make a written demand to Escrow Holder for the deposit (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

20. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

21. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or ☐ ___ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 16; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

22. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

Buyer's Initials ( TD ) ( ______ ) Seller's Initials ( MM ) ( ______ )
VLPA REVISED 11/14 (PAGE 7 OF 11)
VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 7 OF 11)
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com 1169 N Hillcre

23. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

24. **BROKERS:**
   A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

25. **REPRESENTATIVE CAPACITY:** If one or more Parties is signing the Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 37 or 38 and attach a Representative Capacity Signature Addendum (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on the Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall (Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

26. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   A. **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow:** paragraphs 1, 3, 4B, 5, 6, 7A, 8, 9, 12B, 18, 19G, 23, 24A, 25, 26, 32, 35, 36, 37, 38 and paragraph D of the section titled Real Estate Brokers on page 11. If a Copy of the separate compensation agreement(s) provided for in paragraph 24A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 9B(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ___ ) Days, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 9, 12 or elsewhere in this Agreement.
   B. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within 3 Days After Acceptance (or ________________________________ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 12B, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.
   C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 24A and paragraph D of the section titled Real Estate Brokers on page 11. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 24A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.
   D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

Buyer's Initials ( [initials] ) ( ________ ) Seller's Initials ( DS MM ) ( ________ )

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com 1169 N Hillcre

EQUAL HOUSING OPPORTUNITY

DocuSign Envelope ID: BD4B2C5C-4E35-45B1-8DE7-262A2F955732

Property Address: *1169 N Hillcrest Rd, Los Angeles, CA 90210* Date: *January 5, 2015*

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

27. REMEDIES FOR BUYER'S BREACH OF CONTRACT:

A. **Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

B. LIQUIDATED DAMAGES: **If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.** AT TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R.FORM RID).

Buyer's Initials ______ / ______ Seller's Initials MM / ______

28. DISPUTE RESOLUTION:

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Consumer Mediation Center (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 28C.**

B. ARBITRATION OF DISPUTES: **The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 28C.**

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials ______ / ______ Seller's Initials MM / ______

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:

(1) EXCLUSIONS: **The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.**

(2) PRESERVATION OF ACTIONS: **The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (ii) the filing of a mechanic's lien.**

(3) BROKERS: **Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.**

29. SELECTION OF SERVICE PROVIDERS: Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

Buyer's Initials ( ______ ) ( ______ ) Seller's Initials ( MM ) ( ______ )

VLPA REVISED 11/14 (PAGE 9 OF 11)

VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 9 OF 11)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com 1169 N Hillcre

Property Address: *1169 N Hillcrest Rd, Los Angeles, CA 90210* Date: *January 5, 2015*

30. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.
31. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorneys fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 28A.
32. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller (C.A.R. Form AOAA).
33. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.
34. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counteroffer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.
35. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance wth the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**
36. **DEFINITIONS:** As used in this Agreement:
    - A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
    - B. **"Agreement"** means this document and any incorporated addenda, counter offers and written terms Signed by all Parties collectively forming the binding agreement between the Parties. All terms and conditions of any addenda checked and Signed are incorporated into this Agreement.
    - C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
    - D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded.
    - E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
    - F. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
    - G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
    - H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    - I. **"Deliver", "Delivered" or "Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page11, regardless of the method used (i.e., messenger, mail, email, fax, other).
    - J. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
    - K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    - L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    - M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.
37. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by *Branden or Rayni Williams*, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ______ ☐AM/ ☐PM, on ______________(date)).

☐ One or more Buyers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD) for additional terms.

Date 2/6/2015 BUYER DocuSigned by: [signature] 2FF501FB3A5840B...

**(Print name)** *Skyview Capital LLC or Assigne*

Date ________ BUYER ______________________

**(Print name)** *or any affiliated entities*

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Buyer's Initials ( DS [initials] ) ( ________ ) Seller's Initials ( DS MM ) ( ________ )

DocuSign Envelope ID: BD4B2C5C-4E35-45B1-8DE7-262A2F955732

Property Address: *1169 N Hillcrest Rd, Los Angeles, CA 90210* Date: *January 5, 2015*

38. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☒ (If checked) SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form CO or SMCO) DATED: 02/12/2015

☐ One or more Sellers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD) for additional terms.

Date ________ SELLER DocuSigned by: Nil Moffitt AD94B6D5374E4E8...

(Print name) *NAM2 LLC*

Date ________ SELLER ____________________

(Print name) ____________________

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

(_____/_____) (Initials) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized agent on (date) ____________ at ______ ☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

**REAL ESTATE BROKERS:**

A. **Real Estate Brokers are not parties to the Agreement between Buyer and Seller.**

B. **Agency relationships are confirmed as stated in paragraph 2.**

C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.

D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) *Hilton and Hyland* CalBRE Lic. #*00808850*

By [DocuSigned signature] 88E78CCDFF4E4B8... *Williams&Williams* CalBRE Lic. # *01354521* Date ________

By [DocuSigned signature] 88E78CCDFF4E4B8... CalBRE Lic. # ________ Date ________

Address *250 N. Canon Drive* City *Beverly Hills* State *CA* Zip *90210*

Telephone *(310)691-5935* Fax *(310)388-4638* E-mail *Rayni@thewilliamsestates.com*

Real Estate Broker (Listing Firm) *Hilton and Hyland* CalBRE Lic. # ________

By DocuSigned by: Michael LaMontagna *Michael LaMontagna* CalBRE Lic. # *01407095* Date ________

By 2AEB080C1048405... CalBRE Lic. # ________ Date ________

Address ________ City ________ State ______ Zip ______

Telephone ________ Fax ________ E-mail ________

**ESCROW HOLDER ACKNOWLEDGMENT:**

Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☒ a deposit in the amount of $ 665,400 ), counter offer numbers SCO No. "ONE" ☐ Seller's Statement of Information and ________, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is 2-13-15

Escrow Holder [stamp: Granite Escrow Services, 499 N. Canon Drive, Suite 200, Beverly Hills, CA 90210] Escrow # 7861-MF

By ________ Date 2-18-15

Address ________

Phone/Fax/E-mail ________

Escrow Holder has the following license number # 963-1613

☒ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

**PRESENTATION OF OFFER:** (__________) Listing Broker presented this offer to Seller on ____________ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** (______)(______) No counter offer is being made. This offer was rejected by Seller on ____________ (date).
Seller's Initials

©1996- 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by Broker or Designee ________

Buyer's Initials ( ________ ) ( ________ )

EQUAL HOUSING OPPORTUNITY

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com 1169 N Hillcre

DocuSign Envelope ID: 2D68AE27-D39E-486C-AC1D-31ECF668B632

CALIFORNIA
ASSOCIATION
OF REALTORS®

# SELLER COUNTER OFFER No. ONE

May not be used as a multiple counter offer.
(C.A.R. Form SCO, 11/14)

Date *February 13, 2015*

This is a counter offer to the: [X] California Residential Purchase Agreement, [ ] Buyer Counter Offer No. ____, or [ ] Other ________ ("Offer"), dated *January 5, 2015*, on property known as *1169 N Hillcrest Beverly Hills, CA 90210, Beverly Hills, CA 90210* ("Property"), between *Skyview Capital LLC or Assignee, or Any Affiliated entities* ("Buyer") and *NAM2 LLC* ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. **Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.**
   B. **Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.**
   C. **OTHER TERMS:** *1. Expiration date of Residential Purchase Agreement dated January 5th, 2015 to be extended until the issuance of this counter offer #one.*
   *2. Purchase price to be $22,180,000.*
   *3. Buyer and Seller agree to the Liquidated Damages and Arbitration Clauses outlined in the Residential Purchase Agreement.*
   D. **The following attached addenda are incorporated into this Seller Counter offer:** [ ] Addendum No. ________
   [ ] ________ [ ] ________

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00pm on the third Day After the date it is signed in paragraph 3 (if more than one signature then, the last signature date)(or by _____ [ ] AM [ ] PM on __________ (date)) (i) it is signed in paragraph 4 by Buyer and (ii) a copy of the signed Seller Counter Offer is personally received by Seller or *Michael LaMontagna* ____________, who is authorized to receive it.

   OR B. If Seller withdraws it in writing (CAR Form WOO) anytime prior to Acceptance.

3. **OFFER:** SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   Seller (DocuSigned by: ML Moffitt, AD9486D5374E4E8...) *NAM2 LLC* Date 2/13/2015
   Seller ____________ Date ________

4. **ACCEPTANCE:** I/WE accept the above Seller Counter Offer (If checked [ ] **SUBJECT TO THE ATTACHED COUNTER OFFER**) and acknowledge receipt of a Copy.
   Buyer (DocuSigned by: 2FF501FB5A524DB...) *Skyview Capital LLC or Assignee, or Any* Date ________ Time ______ [ ] AM/ [ ] PM
   Buyer ____________ Date ________ Time ______ [ ] AM/ [ ] PM

**CONFIRMATION OF ACCEPTANCE:**

(ML / ______) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by Seller, or Seller's authorized agent as specified in paragraph 2A on (date) 2/13/2015 at ______ [ ] AM/ [ ] PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Seller or Seller's authorized agent whether or not confirmed in this document.**

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ____________ Date ________

Hilton and Hyland, 250 N. Canon Drive Beverly Hills, CA 90210 Phone: 310.925.9826 Fax: 888.255.6016 1169 N Hillcrest -
Michael LaMontagna Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Z

DocuSign Envelope ID: A1CEDB62-EE49-4CDC-B783-B899093D5A26

439 N. Canon Drive, Suite 220
Beverly Hills, CA 90210

Phone: (310) 288-0110
Fax: (310) 807-4381

**GRANITE ESCROW SERVICES IS LICENSED BY THE DEPARTMENT OF BUSINESS OVERSIGHT OF THE STATE OF CALIFORNIA, LICENSE NUMBER 863-1613**

**ACKNOWLEDGEMENT OF CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS**

Mark Fishman
Escrow Officer

**Escrow No.:** 500-007861-MF
**Date:** February 17, 2015

Granite Escrow Services hereby acknowledges receipt of that certain California Association of Realtors **California Vacant Land Purchase Agreement and Joint Escrow Instructions, dated February 5, 2015 and SELLER COUNTER OFFER No. ONE** (herein after the **Purchase Agreement**) between Skyview Capital LLC **or Assignee or any affiliated entities** (Buyer) and 1169 Hillcrest, LLC (Seller). Buyer and Seller hereby acknowledge that the acceptance of the transaction is February 13, 2015. Granite Escrow Services duties and responsibilities are limited to Paragraph 26 in the Purchase Agreement, specifically outlining the duties that the Escrow Holder is obligated to perform. All other terms and conditions in the Purchase Agreement shall be between the principals only and Escrow Holder is not to be concerned. The General Provisions attached to this acknowledgement shall be incorporated herein and made a part hereof and have been read and approved by the principals to this escrow. In the event of a conflict between the terms of the Purchase Agreement with any of the General Provisions referenced herein, the General Provisions shall serve as the prevailing document and shall govern the Escrow Holder.

In addition to the above and in compliance with California Department of Business Oversight regulations, the principals further acknowledge the following:

**ELECTRONIC SIGNATURE ACKNOWLEDGEMENT:** In the event Buyer and Seller utilize Electronically transmitted signatures for instructions and/or documentation, Buyer and/or Seller hereby agree to allow escrow holder to rely upon such documents as if they bore original signatures. Buyer and Seller hereby acknowledge and agree to provide escrow holder, upon request and within seventy two (72) hours of transmission, such instructions and/or documentation bearing original signatures, only if absolutely required by a lender or other interested third party to complete this transaction. Buyer and Seller further acknowledge and agree that hard copies of electronically executed documents and/or documents with non-original signatures will not be accepted for recording by the County Recorder, thus making impossible the closing of a customary escrow. The signature hereunder of the parties to this agreement hereby consent to the use of electronically executed documents for the purposes of expediting this transaction and Granite Escrow Services shall be held free and harmless from any liability and/or responsibility that may arise now or in the future with regard to authenticating or verifying the actual signature of either party to this transaction.

| SELLERS: | BUYERS: |
|---|---|
| 1169 Hillcrest, LLC, a Nevada Limited Liability Company | Skyview Capital LLC |
| By: ______________________ | By: DocuSigned by: Alex Soltani 2FF501FB5A584DB... |
| Neil Moffitt, Authorized Signer | Authorized Signer |

(CONTINUED)

Seller's Initials: ______/______ Buyer's Initials: DS AS /______

DocuSign Envelope ID: A1CEDB62-EE49-4CDC-B783-B899093D5A26

Date: February 17, 2015

Escrow No.: 500-007861-MF

GENERAL PROVISIONS

The parties hereby direct Granite Escrow Services, (the Escrow Holder) to comply with the following:

1. **Acts Outside of Escrow:** Escrow Holder has no responsibility for acts performed outside of these Escrow Conditions and Instructions, and is specifically relieved of any obligation relative thereto.

2. **Escrow Funds:** All funds received in this escrow may be deposited with funds from other escrows in a general non-interest bearing trust account in any state or federal bank of Escrow Holder's choosing. The parties recognize that the FDIC insurance on this account may not be sufficient to cover all of their specific deposit, but nevertheless requests that Escrow Holder maintain all funds in such account. All disbursements shall be made by Escrow Holder's check or wire transfer on this account.

3. **Prorations / Adjustments:** Escrow Holder will make all prorations and adjustments at the Close of Escrow, as defined hereafter. The prorations and adjustments will be made on the basis of a 360 day year. "Close of Escrow" as referred to in these General Provisions means the date on which documents are recorded, unless otherwise specified in writing

4. **Deposits from Third Parties:** Escrow Holder shall not be obliged to accept any funds from any person who is not a party to the transaction or escrow. However, in the event that Escrow Holder does agree to accept payment from a third party, Escrow Holder will require the third party to execute and deliver to Escrow Holder a Third Party Deposit Instruction and/or any other document/s that may be required by Escrow Holder.

5. **Fees and Expenses:** Buyer and Seller agree to pay their respective escrow fees which Escrow Holder customarily charges to each party and all other costs and expenses incurred by Escrow Holder respectively on their behalf. Escrow Holder may, at Escrow Holder's discretion, charge additional fees to the parties for electronic document processing, for services which are beyond those usual in this type of escrow, retain a sub-escrow agent and charge its fees to the parties, charge for the regulatory audit fees, and use any form of express mail or courier and charge those costs to the parties. Buyer and Seller understand that Escrow Holder, at its sole discretion, reserves the right to reduce the escrow fee of either party in this transaction without further instructions herein. If, in Escrow Holder's discretion, Escrow Holder deems it necessary to obtain legal advice regarding any issue in this escrow, the parties, jointly and severally, shall reimburse Escrow Holder for any fees and expenses incurred. Escrow Holder's fees and the costs incurred in this escrow may be taken from any monies on deposit with Escrow Holder; the parties assume responsibility for determining liability for payment between them.

6. **Disbursements by Escrow Holder:** At the close of escrow, all payments required to be made pursuant to the Purchase Agreement and/or by any city, county or state ordinances, regulations, by-laws or the like shall be paid out of the Seller's proceeds without further instructions being required, unless the contrary is stated in the Purchase Agreement.

7. **Affiliated Business Arrangement Disclosure:** The controlling principals of Granite Escrow Services have ownership interest in Limestone Signing Services, Inc. and Code Violations Services, Inc. Because of this relationship, the referral of business to this company may provide us or other related parties noted herein a financial or other benefit. Granite Escrow Services will not be paid a referral fee as a result of any referral.

8. **Reliance:** A signature on these instructions and any document concerning this escrow means that the signatory has read, understands and approves the instruction or document. Escrow Holder has no responsibility to determine the validity or sufficiency of any document or signature on any document deposited in this escrow. Escrow Holder shall not comply with any notice, demand or instruction that is not in writing. Escrow Holder may furnish copies of the escrow instructions and closing statements to real estate brokers representing the parties to this escrow and any lender/s to a party or as instructed in writing by a party. Escrow Holder has no duty to notify any party to the escrow of any sale, loan, exchange or other transaction involving any property that is the subject of this escrow, or of any profit realized by any person or entity to this escrow.

(CONTINUED)

Seller's Initials: ______/______

Buyer's Initials: DS AS /______

DocuSign Envelope ID: A1CEDB62-EE49-4CDC-B783-B899093D5A26

Date: February 17, 2015

Escrow No.: 500-007861-MF

Page 3 of 5: Additional instructions made a part of previous pages as fully incorporated therein.

9. **Privacy:** Escrow Holder is committed to maintaining the confidentiality, integrity and security of personal information entrusted to us by current and prospective clients. We will safeguard your non-public personal information and protect your privacy rights in accordance with state and federal laws. We collect nonpublic personal information about you from the following sources: (i) Information provided in correspondence, applications or other forms or documents submitted by you or on your behalf and other communications and (ii) Information from third parties including real estate agents and brokers, mortgage companies and lenders, title companies, contractors, bookkeepers and accountants, attorneys, homeowners associations, insurance agents, federal, state or local tax or governmental authorities or from others who may give us information on forms or by other methods including but not limited to, telephone, e-mail, facsimile transmission.

10. **Categories of Parties To Whom Escrow Holder Discloses:** Escrow Holder may disclose nonpublic personal information about you to the following types of third parties: (i) Financial service providers such as title insurance and underwritten title companies, mortgage companies and lenders as well as insurance agents and companies associated with your escrow transaction; (ii) Nonfinancial companies such as homeowners associations, attorney, bookkeepers and accountants, federal, state or local tax or governmental authorities, real estate agents and brokers associated with this escrow transaction; (iii) Service Providers including contractors, structural pest control operators and others rendering services to you or the real property or business that is the subject of this escrow transaction. Escrow Holder may also disclose nonpublic personal information about you to nonaffiliated third parties as permitted by law. Otherwise, Escrow Holder does not disclose personal or confidential information to anyone outside our company without your consent. Escrow Holder restricts access to your personal and escrow file information to those employees who need to know that information to provide products or services to you. Escrow Holder maintains physical, electronic and procedural safeguards that comply with federal regulations to guard your nonpublic personal information. Your information is stored on a secure computer and in physical files. When Escrow Holder disposes of old physical paper files, such files are shredded and recycled by a bonded security company.

11. **Resignation:** Escrow Holder may resign at any time from its obligations under these instructions by providing written notice to the Parties. Such resignation shall be effective on the date set forth in such written notice, which shall be no earlier than fourteen (14) days after such written notice has been given. In the event no successor escrow holder has been appointed on or prior to the date such resignation is to become effective, Escrow Holder shall be entitled to tender into the custody of any court of competent jurisdiction all funds or other items that may be held by Escrow Officer or, at Escrow Holder's sole discretion, return all funds deposited to the originating parties, and shall thereupon be relieved of all further duties and obligations under these instructions; provided, however, Escrow Holder shall be entitled to its fee as referred to above or any other compensation earned prior thereto. Escrow Holder shall have no responsibility for the appointment of a successor escrow holder hereunder.

12. **Attorney's Fees:** If any legal action, arbitration or other proceeding is brought relating to this escrow or these instructions, or because of an alleged dispute, breach, default or misrepresentation in connection with the transactions involved in these instructions, Escrow Holder shall be entitled to recover costs incurred, including reasonable attorney's fees, from all parties to this escrow. In any collection of monies due relating to this escrow without litigation, the collecting party shall be entitled to its costs, including reasonable attorney's fees. If, for any reason, Escrow Holder is required to appear at any litigation, arbitration or administrative proceeding concerning this escrow as a witness, the parties jointly and severally shall pay Escrow Holder for all costs, expenses and fees incurred by Escrow Holder in such matter, including Escrow Holder's reasonable attorney's fees.

13. **Closing; Cancellation; Payment Of Fees And Costs and Delay in Close of Escrow:** If this escrow is not in a condition to close by the specified closing date, Escrow Holder shall close as soon as possible unless Escrow Holder receives a written notice of cancellation from any one or all of the parties. On receipt of a notice of cancellation, Escrow Holder shall forward a copy of such cancellation to all parties. In the event of cancellation, Escrow Holder is due cancellation fees and costs incurred and may take from any monies on deposit with Escrow Holder any sums necessary to pay all fees and costs incurred in this escrow.

Unless written demand for cancellation is provided to Escrow Holder, if any conditions in this escrow have not been met prior to the specified closing date, Escrow Holder may proceed to close the escrow once all the

(CONTINUED)

Seller's Initials: ______/______

Buyer's Initials: DS AS ______/______

DocuSign Envelope ID: A1CEDB62-EE49-4CDC-B783-B899093D5A26

Date: February 17, 2015

Escrow No.: 500-007861-MF

Page 4 of 5: Additional instructions made a part of previous pages as fully incorporated therein.

conditions have been met notwithstanding the fact that the specified closing date has passed. Escrow Holder shall not be liable for the delay in the Close of Escrow as a result of the conditions not having been met prior to the closing date.

14. **Corrections:** In the event monies are disbursed incorrectly by Escrow Holder for any reason, each party agrees to co-operate with Escrow Holder and to promptly return to Escrow Holder any monies disbursed incorrectly to him/her/it on notice from Escrow Holder. If any legal action, arbitration or other proceeding is brought to collect monies incorrectly disbursed, Escrow Holder shall be entitled to recover its costs incurred, including attorney's fees.

15. **Instructions and/or Requirements from Lenders:** The parties hereby authorize Escrow Holder to comply with the lender's instructions and/or requirements as may be required in this escrow, and Escrow Holder may, but shall not be obliged to comply with such instructions and/or requirements. In the event that Escrow Holder does comply with the lender's instructions and/or requirements, the parties indemnify and hold Escrow Holder harmless for all or any claims of whatsoever nature in this regard.

16. **Closing Funds:** The parties acknowledge that the disbursement of any funds by Escrow Holder and the close of escrow is conditioned on check clearances. Funds to close must be in the form of a wire transfer to Escrow Holder's Trust Account at least two (2) days prior to recording of documents. California Insurance Code Section 12413.1 requires that funds be deposited by the title company prior to escrow disbursement. Escrow Holder shall not receive any funds in cash. Wired funds may be disbursed on the same day as deposited. All parties are aware that no interest will be paid to recipients of funds as a result of meeting these requirements.

17. **1099 Form:** As required by law, the Seller shall hand to Escrow Holder an IRS 1099 gross proceeds report, which Escrow Holder is to forward to the IRS, and a copy thereof is to be delivered to the Seller at the close of escrow. This is NOT in lieu of any tax withholding which may become applicable under FIRPTA. Escrow Holder is authorized and instructed to insert Buyer's portion of the real estate tax paid, over the signature of the Seller on said 1099 at the close of escrow without any liability on the part of Escrow Holder.

18. **Duties of Escrow Holder; Indemnification:** Escrow Holder undertakes to perform only such duties as are expressly set forth herein and no additional duties or obligations shall be implied hereunder. In performing its duties under these instructions, or upon the claimed failure to perform any of its duties hereunder, Escrow Holder, it's officers, employees, representatives and assigns shall not be liable to anyone for any damages, losses or expenses which may be incurred as a result of Escrow Holder's so acting or failing to so act; provided, however, that the Escrow Holder shall not be relieved from liability for damages arising from Escrow Holder's proven gross negligence or willful misconduct. Escrow Holder shall in no event incur any liability with respect to (i) any action taken or omitted to be taken in good faith upon advice of legal counsel, which may be counsel to either party hereto, given with respect to any question relating to the duties and responsibilities of Escrow Holder hereunder, or (ii) any action taken or omitted to be taken in reliance upon any instrument delivered to Escrow Holder and believed by it to be genuine and to have been signed or presented by the proper party or parties.

19. **Venue For Litigation:** All rights and duties of the parties hereunder shall be governed by the laws of the State of California, and any litigation, arbitration or other proceeding brought regarding this escrow shall be brought in a court or tribunal of appropriate jurisdiction in California closest to the office of Escrow Holder.

20. **Statute of Limitations:** No action shall lie against Escrow Holder for any claim, loss, liability or alleged cause of action of any kind or nature whatsoever, howsoever caused under this escrow or in connection with the handling or processing of this escrow, unless brought within twelve (12) months after the close of escrow or any cancellation, transfer or termination of escrow for any reason whatsoever. If the action is not brought within the twelve (12) month period such action will be forever barred by the parties.

21. **Counterparts:** These instructions may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(CONTINUED)

Seller's Initials: ______/______

Buyer's Initials: DS AS ______/______

DocuSign Envelope ID: A1CEDB62-EE49-4CDC-B783-B899093D5A26

Date: February 17, 2015

Escrow No.: 500-007861-MF

Page 5 of 5: Additional instructions made a part of previous pages as fully incorporated therein.

22. **Documents submitted electronically:** A photocopy of these instructions shall have the same force and effect as the original. The parties agree that Escrow Holder may, but is not obliged to, act upon any instructions which are e-mailed or sent by way of facsimile to Escrow Holder and Escrow Holder does not need the original document in order to act. Escrow Holder has no responsibility for verifying the validity of any document/s deposited into escrow, nor the identity, authority or rights of any person executing any document/s in the escrow. Escrow Holder shall not be liable for any loss of whatsoever nature that may occur as a result of forgeries, fraud or false representations made by or involving the principals to this escrow, their agent/s, broker/s or any other party or entity.

23. **Delivery of Documents:** All documents, notices or other communications sent by Escrow Holder to a party shall be deemed delivered (a) if delivered in person, on the date of delivery, (b) if sent by facsimile or electronic mail, on the date it was sent, (c) if sent by courier, on the date of delivery, (d) if sent by US mail, five business days after posting.

24. **Amendments:** What is contained herein including all exhibits and addenda contains the entire agreement of the parties with respect to its subject matter and supersede all prior writings. No amendment, modification, demand, notice or change in instruction will be of any force or effect unless it is reduced to writing and signed by all the parties affected thereby.

**SELLERS:**

1169 Hillcrest, LLC, a Nevada Limited Liability Company

By: ______________________________
Neil Moffitt, Authorized Signer

**BUYERS:**

Skyview Capital LLC

DocuSigned by:
Alex Soltani
2FF501FB5A584DB...

By: ______________________________
Authorized Signer

DocuSign Envelope ID: E10792F8-EE12-4E57-AB39-6B3342ED1420

439 N. Canon Drive, Suite 220
Beverly Hills, CA 90210

Phone: (310) 288-0110
Fax: (310) 807-4381

GRANITE ESCROW SERVICES IS LICENSED BY THE DEPARTMENT OF BUSINESS OVERSIGHT OF THE STATE OF CALIFORNIA, LICENSE NUMBER 863-1613

ACKNOWLEDGEMENT OF CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

Mark Fishman
Escrow Officer

Escrow No.: 500-007861-MF
Date: February 17, 2015

Granite Escrow Services hereby acknowledges receipt of that certain California Association of Realtors **California Vacant Land Purchase Agreement and Joint Escrow Instructions, dated February 5, 2015 and SELLER COUNTER OFFER No. ONE** (herein after the **Purchase Agreement**) between Skyview Capital LLC or Assignee or any affiliated entities (Buyer) and 1169 Hillcrest, LLC (Seller). Buyer and Seller hereby acknowledge that the acceptance of the transaction is February 13, 2015. Granite Escrow Services duties and responsibilities are limited to Paragraph 26 in the Purchase Agreement, specifically outlining the duties that the Escrow Holder is obligated to perform. All other terms and conditions in the Purchase Agreement shall be between the principals only and Escrow Holder is not to be concerned. The General Provisions attached to this acknowledgement shall be incorporated herein and made a part hereof and have been read and approved by the principals to this escrow. In the event of a conflict between the terms of the Purchase Agreement with any of the General Provisions referenced herein, the General Provisions shall serve as the prevailing document and shall govern the Escrow Holder.

In addition to the above and in compliance with California Department of Business Oversight regulations, the principals further acknowledge the following:

**ELECTRONIC SIGNATURE ACKNOWLEDGEMENT:** In the event Buyer and Seller utilize Electronically transmitted signatures for instructions and/or documentation, Buyer and/or Seller hereby agree to allow escrow holder to rely upon such documents as if they bore original signatures. Buyer and Seller hereby acknowledge and agree to provide escrow holder, upon request and within seventy two (72) hours of transmission, such instructions and/or documentation bearing original signatures, only if absolutely required by a lender or other interested third party to complete this transaction. Buyer and Seller further acknowledge and agree that hard copies of electronically executed documents and/or documents with non-original signatures will not be accepted for recording by the County Recorder, thus making impossible the closing of a customary escrow. The signature hereunder of the parties to this agreement hereby consent to the use of electronically executed documents for the purposes of expediting this transaction and Granite Escrow Services shall be held free and harmless from any liability and/or responsibility that may arise now or in the future with regard to authenticating or verifying the actual signature of either party to this transaction.

| SELLERS: | BUYERS: |
|---|---|
| 1169 Hillcrest, LLC, a Nevada Limited Liability Company | Skyview Capital LLC |
| By: DocuSigned by: Neil Moffitt<br>Neil Moffitt, Authorized Signer<br>A39E55E5D73247C... | By: ____________________<br>Authorized Signer |

(CONTINUED)

Seller's Initials: DS MM / ______ Buyer's Initials: ______ / ______

DocuSign Envelope ID: E10792F8-EE12-4E57-AB39-6B3342ED1420

Date: February 17, 2015 Escrow No.: 500-007861-MF

GENERAL PROVISIONS

The parties hereby direct Granite Escrow Services, (the Escrow Holder) to comply with the following:

1. **Acts Outside of Escrow:** Escrow Holder has no responsibility for acts performed outside of these Escrow Conditions and Instructions, and is specifically relieved of any obligation relative thereto.

2. **Escrow Funds:** All funds received in this escrow may be deposited with funds from other escrows in a general non-interest bearing trust account in any state or federal bank of Escrow Holder's choosing. The parties recognize that the FDIC insurance on this account may not be sufficient to cover all of their specific deposit, but nevertheless requests that Escrow Holder maintain all funds in such account. All disbursements shall be made by Escrow Holder's check or wire transfer on this account.

3. **Prorations / Adjustments:** Escrow Holder will make all prorations and adjustments at the Close of Escrow, as defined hereafter. The prorations and adjustments will be made on the basis of a 360 day year. "Close of Escrow" as referred to in these General Provisions means the date on which documents are recorded, unless otherwise specified in writing

4. **Deposits from Third Parties:** Escrow Holder shall not be obliged to accept any funds from any person who is not a party to the transaction or escrow. However, in the event that Escrow Holder does agree to accept payment from a third party, Escrow Holder will require the third party to execute and deliver to Escrow Holder a Third Party Deposit Instruction and/or any other document/s that may be required by Escrow Holder.

5. **Fees and Expenses:** Buyer and Seller agree to pay their respective escrow fees which Escrow Holder customarily charges to each party and all other costs and expenses incurred by Escrow Holder respectively on their behalf. Escrow Holder may, at Escrow Holder's discretion, charge additional fees to the parties for electronic document processing, for services which are beyond those usual in this type of escrow, retain a sub-escrow agent and charge its fees to the parties, charge for the regulatory audit fees, and use any form of express mail or courier and charge those costs to the parties. Buyer and Seller understand that Escrow Holder, at its sole discretion, reserves the right to reduce the escrow fee of either party in this transaction without further instructions herein. If, in Escrow Holder's discretion, Escrow Holder deems it necessary to obtain legal advice regarding any issue in this escrow, the parties, jointly and severally, shall reimburse Escrow Holder for any fees and expenses incurred. Escrow Holder's fees and the costs incurred in this escrow may be taken from any monies on deposit with Escrow Holder; the parties assume responsibility for determining liability for payment between them.

6. **Disbursements by Escrow Holder:** At the close of escrow, all payments required to be made pursuant to the Purchase Agreement and/or by any city, county or state ordinances, regulations, by-laws or the like shall be paid out of the Seller's proceeds without further instructions being required, unless the contrary is stated in the Purchase Agreement.

7. **Affiliated Business Arrangement Disclosure:** The controlling principals of Granite Escrow Services have ownership interest in Limestone Signing Services, Inc. and Code Violations Services, Inc. Because of this relationship, the referral of business to this company may provide us or other related parties noted herein a financial or other benefit. Granite Escrow Services will not be paid a referral fee as a result of any referral.

8. **Reliance:** A signature on these instructions and any document concerning this escrow means that the signatory has read, understands and approves the Instruction or document. Escrow Holder has no responsibility to determine the validity or sufficiency of any document or signature on any document deposited in this escrow. Escrow Holder shall not comply with any notice, demand or instruction that is not in writing. Escrow Holder may furnish copies of the escrow instructions and closing statements to real estate brokers representing the parties to this escrow and any lender/s to a party or as instructed in writing by a party. Escrow Holder has no duty to notify any party to the escrow of any sale, loan, exchange or other transaction involving any property that is the subject of this escrow, or of any profit realized by any person or entity to this escrow.

(CONTINUED)

Seller's Initials: DS MM /______ Buyer's Initials: ______/______

DocuSign Envelope ID: E10792F8-EE12-4E57-AB39-6B3342ED1420

Date: February 17, 2015 Escrow No.: 500-007861-MF

Page 3 of 5: Additional instructions made a part of previous pages as fully incorporated therein.

9. **Privacy:** Escrow Holder is committed to maintaining the confidentiality, integrity and security of personal information entrusted to us by current and prospective clients. We will safeguard your non-public personal information and protect your privacy rights in accordance with state and federal laws. We collect nonpublic personal information about you from the following sources: (i) Information provided in correspondence, applications or other forms or documents submitted by you or on your behalf and other communications and (ii) Information from third parties including real estate agents and brokers, mortgage companies and lenders, title companies, contractors, bookkeepers and accountants, attorneys, homeowners associations, insurance agents, federal, state or local tax or governmental authorities or from others who may give us information on forms or by other methods including but not limited to, telephone, e-mail, facsimile transmission.

10. **Categories of Parties To Whom Escrow Holder Discloses:** Escrow Holder may disclose nonpublic personal information about you to the following types of third parties: (i) Financial service providers such as title insurance and underwritten title companies, mortgage companies and lenders as well as insurance agents and companies associated with your escrow transaction; (ii) Nonfinancial companies such as homeowners associations, attorney, bookkeepers and accountants, federal, state or local tax or governmental authorities, real estate agents and brokers associated with this escrow transaction; (iii) Service Providers including contractors, structural pest control operators and others rendering services to you or the real property or business that is the subject of this escrow transaction. Escrow Holder may also disclose nonpublic personal information about you to nonaffiliated third parties as permitted by law. Otherwise, Escrow Holder does not disclose personal or confidential information to anyone outside our company without your consent. Escrow Holder restricts access to your personal and escrow file information to those employees who need to know that information to provide products or services to you. Escrow Holder maintains physical, electronic and procedural safeguards that comply with federal regulations to guard your nonpublic personal information. Your information is stored on a secure computer and in physical files. When Escrow Holder disposes of old physical paper files, such files are shredded and recycled by a bonded security company.

11. **Resignation:** Escrow Holder may resign at any time from its obligations under these instructions by providing written notice to the Parties. Such resignation shall be effective on the date set forth in such written notice, which shall be no earlier than fourteen (14) days after such written notice has been given. In the event no successor escrow holder has been appointed on or prior to the date such resignation is to become effective, Escrow Holder shall be entitled to tender into the custody of any court of competent jurisdiction all funds or other items that may be held by Escrow Officer or, at Escrow Holder's sole discretion, return all funds deposited to the originating parties, and shall thereupon be relieved of all further duties and obligations under these instructions; provided, however, Escrow Holder shall be entitled to its fee as referred to above or any other compensation earned prior thereto. Escrow Holder shall have no responsibility for the appointment of a successor escrow holder hereunder.

12. **Attorney's Fees:** If any legal action, arbitration or other proceeding is brought relating to this escrow or these instructions, or because of an alleged dispute, breach, default or misrepresentation in connection with the transactions involved in these instructions, Escrow Holder shall be entitled to recover costs incurred, including reasonable attorney's fees, from all parties to this escrow. In any collection of monies due relating to this escrow without litigation, the collecting party shall be entitled to its costs, including reasonable attorney's fees. If, for any reason, Escrow Holder is required to appear at any litigation, arbitration or administrative proceeding concerning this escrow as a witness, the parties jointly and severally shall pay Escrow Holder for all costs, expenses and fees incurred by Escrow Holder in such matter, including Escrow Holder's reasonable attorney's fees.

13. **Closing; Cancellation; Payment Of Fees And Costs and Delay in Close of Escrow:** If this escrow is not in a condition to close by the specified closing date, Escrow Holder shall close as soon as possible unless Escrow Holder receives a written notice of cancellation from any one or all of the parties. On receipt of a notice of cancellation, Escrow Holder shall forward a copy of such cancellation to all parties. In the event of cancellation, Escrow Holder is due cancellation fees and costs incurred and may take from any monies on deposit with Escrow Holder any sums necessary to pay all fees and costs incurred in this escrow.

Unless written demand for cancellation is provided to Escrow Holder, if any conditions in this escrow have not been met prior to the specified closing date, Escrow Holder may proceed to close the escrow once all the

(CONTINUED)

Seller's Initials: DS MM / ______ Buyer's Initials: ______/______

Date: February 17, 2015

Escrow No.: 500-007861-MF

Page 4 of 5: Additional instructions made a part of previous pages as fully incorporated therein.

conditions have been met notwithstanding the fact that the specified closing date has passed. Escrow Holder shall not be liable for the delay in the Close of Escrow as a result of the conditions not having been met prior to the closing date.

14. **Corrections:** In the event monies are disbursed incorrectly by Escrow Holder for any reason, each party agrees to co-operate with Escrow Holder and to promptly return to Escrow Holder any monies disbursed incorrectly to him/her/it on notice from Escrow Holder. If any legal action, arbitration or other proceeding is brought to collect monies incorrectly disbursed, Escrow Holder shall be entitled to recover its costs incurred, including attorney's fees.

15. **Instructions and/or Requirements from Lenders:** The parties hereby authorize Escrow Holder to comply with the lender's instructions and/or requirements as may be required in this escrow, and Escrow Holder may, but shall not be obliged to comply with such instructions and/or requirements. In the event that Escrow Holder does comply with the lender's instructions and/or requirements, the parties indemnify and hold Escrow Holder harmless for all or any claims of whatsoever nature in this regard.

16. **Closing Funds:** The parties acknowledge that the disbursement of any funds by Escrow Holder and the close of escrow is conditioned on check clearances. Funds to close must be in the form of a wire transfer to Escrow Holder's Trust Account at least two (2) days prior to recording of documents. California Insurance Code Section 12413.1 requires that funds be deposited by the title company prior to escrow disbursement. Escrow Holder shall not receive any funds in cash. Wired funds may be disbursed on the same day as deposited. All parties are aware that no interest will be paid to recipients of funds as a result of meeting these requirements.

17. **1099 Form:** As required by law, the Seller shall hand to Escrow Holder an IRS 1099 gross proceeds report, which Escrow Holder is to forward to the IRS, and a copy thereof is to be delivered to the Seller at the close of escrow. This is NOT in lieu of any tax withholding which may become applicable under FIRPTA. Escrow Holder is authorized and instructed to insert Buyer's portion of the real estate tax paid, over the signature of the Seller on said 1099 at the close of escrow without any liability on the part of Escrow Holder.

18. **Duties of Escrow Holder; Indemnification:** Escrow Holder undertakes to perform only such duties as are expressly set forth herein and no additional duties or obligations shall be implied hereunder. In performing its duties under these instructions, or upon the claimed failure to perform any of its duties hereunder, Escrow Holder, it's officers, employees, representatives and assigns shall not be liable to anyone for any damages, losses or expenses which may be incurred as a result of Escrow Holder's so acting or failing to so act; provided, however, that the Escrow Holder shall not be relieved from liability for damages arising from Escrow Holder's proven gross negligence or willful misconduct. Escrow Holder shall in no event incur any liability with respect to (i) any action taken or omitted to be taken in good faith upon advice of legal counsel, which may be counsel to either party hereto, given with respect to any question relating to the duties and responsibilities of Escrow Holder hereunder, or (ii) any action taken or omitted to be taken in reliance upon any instrument delivered to Escrow Holder and believed by it to be genuine and to have been signed or presented by the proper party or parties.

19. **Venue For Litigation:** All rights and duties of the parties hereunder shall be governed by the laws of the State of California, and any litigation, arbitration or other proceeding brought regarding this escrow shall be brought in a court or tribunal of appropriate jurisdiction in California closest to the office of Escrow Holder.

20. **Statute of Limitations:** No action shall lie against Escrow Holder for any claim, loss, liability or alleged cause of action of any kind or nature whatsoever, howsoever caused under this escrow or in connection with the handling or processing of this escrow, unless brought within twelve (12) months after the close of escrow or any cancellation, transfer or termination of escrow for any reason whatsoever. If the action is not brought within the twelve (12) month period such action will be forever barred by the parties.

21. **Counterparts:** These instructions may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(CONTINUED)

Seller's Initials DS MM /_____

Buyer's Initials: _____/_____

DocuSign Envelope ID: E10792F8-EE12-4E57-AB39-6B3342ED1420

Date: February 17, 2015

Escrow No.: 500-007861-MF

Page 5 of 5: Additional instructions made a part of previous pages as fully incorporated therein.

22. **Documents submitted electronically:** A photocopy of these instructions shall have the same force and effect as the original. The parties agree that Escrow Holder may, but is not obliged to, act upon any instructions which are e-mailed or sent by way of facsimile to Escrow Holder and Escrow Holder does not need the original document in order to act. Escrow Holder has no responsibility for verifying the validity of any document/s deposited into escrow, nor the identity, authority or rights of any person executing any document/s in the escrow. Escrow Holder shall not be liable for any loss of whatsoever nature that may occur as a result of forgeries, fraud or false representations made by or involving the principals to this escrow, their agent/s, broker/s or any other party or entity.

23. **Delivery of Documents:** All documents, notices or other communications sent by Escrow Holder to a party shall be deemed delivered (a) if delivered in person, on the date of delivery, (b) if sent by facsimile or electronic mail, on the date it was sent, (c) if sent by courier, on the date of delivery, (d) if sent by US mail, five business days after posting.

24. **Amendments:** What is contained herein including all exhibits and addenda contains the entire agreement of the parties with respect to its subject matter and supersede all prior writings. No amendment, modification, demand, notice or change in instruction will be of any force or effect unless it is reduced to writing and signed by all the parties affected thereby.

**SELLERS:**

1169 Hillcrest, LLC, a Nevada Limited Liability Company

DocuSigned by:

By: Neil Moffitt

Neil Moffitt, Authorized Signer

**BUYERS:**

Skyview Capital LLC

By: ______________________

Authorized Signer

3

DocuSign Envelope ID: 4CE1BB49-ECAF-479A-A2B3-720DB8AB4929

CALIFORNIA
ASSOCIATION
OF REALTORS®

# ADDENDUM

(C.A.R. Form ADM, Revised 4/12)

No. *One.*

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☒ Other *Contingency Removal One.*

dated *March 2, 2015*, on property known as *1169 N Hillcrest Rd Los Angeles, CA 90210*

in which *Skyview Capital LLC or Assigne, or any affiliated entities* is referred to as ("Buyer/Tenant")

and *NAM2 LLC* is referred to as ("Seller/Landlord").

*1. Buyer removes any/all contingencies.*

*2. Closing date to be amended to April 6, 2015.*

*3. Buyer's Agent commission to be reduced by $75,000.00*

*4. Seller's Agent commission to be reduced by $75,000.00*

*5. Buyer's 3% deposit to be released to the Seller as per the RPA after:*
*Seller, NAM2 LLC, provides proof that the Entity that will be conveying property (sufficient for the ensuring title company) and deposit into Escrow a fully executed Grant Deed in recordable form within 3 days.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date *March 2, 2015* DocuSigned by: [signature] 2FE501FB5A534DB...

Buyer/Tenant *Skyview Capital LLC or Assigne*

Buyer/Tenant ____ *or any affiliated entities*

Date 3/2/2015

Seller/Landlord DocuSigned by: Neil Moffitt — *NAM2 LLC* AD9466D5374E4E8...

Seller/Landlord ____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1986-2012, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ______ Date ______

EQUAL HOUSING OPPORTUNITY

ADM REVISED 4/12 (PAGE 1 OF 1)

ADDENDUM (ADM PAGE 1 OF 1)

Hilton & Hyland 250 North Canon Drive Beverly Hills, CA 90210 Phone: (310)925-9281 Fax: (310) 388-4635 1169 N Hillcre
Rayni Romito Williams Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com



DocuSign Envelope ID: 4CE1BB49-ECAF-479A-A2B3-720DB8AB4929

CALIFORNIA
ASSOCIATION
OF REALTORS®

# CONTINGENCY REMOVAL No. *One.*

(C.A.R. Form Revised CR, 11/14)

In accordance with the terms and conditions of the: ☐ Residential Purchase Agreement (C.A.R. Form RPA-CA), or ☐ Residential Income Property Purchase Agreement (C.A.R. Form RIPA), or ☐ Commercial Property Purchase Agreement (C.A.R. Form CPA), or ☒ Vacant Land Purchase Agreement (C.A.R. Form VLPA) or ☐ Other ______ ("Agreement"), dated *02/05/2015*, on property known as *1169 N Hillcrest Rd, Los Angeles, CA 90210* ("Property"), between *Skyview Capital LLC or Assigne, or any affiliated entities* ("Buyer") and *NAM2 LLC* ("Seller").

**I. BUYER REMOVAL OF BUYER CONTINGENCIES:**

1. Buyer removes those contingencies specified below.

   **A. ONLY the following individually checked Buyer contingencies are removed:**
   1. ☐ Loan (Paragraph 3J)
   2. ☐ Appraisal (Paragraph 3I)
   3. ☐ Buyer's Investigation, including insurability (Paragraph 12)
   4. ☐ Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 10F)
   5. ☐ Reports/Disclosures (Paragraphs 7 and 10)
   6. ☐ Title: Preliminary Report (Paragraph 13)
   7. ☐ Sale of Buyer's Property (Paragraph 4B)
   8. ☐ Review of documentation for leased or liened items (Paragraph 8B(4)
   9. ☐ ______
   10. ☐ ______

   **OR B.** ☐ **ALL Buyer contingencies are removed, EXCEPT:** ☐ Loan Contingency (Paragraph 3J); ☐ Appraisal Contingency (Paragraph 3I); ☐ Contingency for the Sale of Buyer's Property (Paragraph 4B); ☐ Condominium/Planned Development (HOA) Disclosures (Paragraph 10F); ☐ Other ______

   **OR C.** ☒ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

2. With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations and review of reports and other applicable information and disclosures; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and, expense, if any, for Repairs, corrections, or for the inability to obtain financing.

3. **Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.**

**NOTE:** Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA). Applicable paragraph numbers for each contingency or contractual action in other C.A.R. contracts are found in Contract Paragraph Matrix (C.A.R. Form CPM).

DocuSigned by: [signature] 2FF591FB5A584DB...

Buyer *Skyview Capital LLC or Assigne* Date *03/02/2015*

Buyer *or any affiliated entities* Date ______

**II. SELLER REMOVAL OF SELLER CONTINGENCIES:** Seller hereby removes the following Seller contingencies: ☐ Contingency for Seller's purchase of replacement property (C.A.R. Form SPRP); ☐ Other ______

Seller *NAM2 LLC* Date ______

Seller ______ Date ______

(*HL* / ______) (Initials) **CONFIRMATION OF RECEIPT:** A copy of this signed Contingency Removal was personally received by ☐ Buyer ☒ Seller or authorized agent on 3/2/2015 (date), at ______ ☐ AM/ ☐ PM.

© 2003-2014, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ______ Date ______

CR REVISED 11/14 (PAGE 1 OF 1)

CONTINGENCY REMOVAL (CR PAGE 1 OF 1)

Hilton & Hyland 250 North Canon Drive Beverly Hills, CA 90210 Phone: (310)925-9231 Fax: (310) 388-4638 1169 N Hillcre
Rayni Romito Williams Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

5

DocuSign Envelope ID: A1CEDB62-EE49-4CDC-B783-B899093D5A26




439 N. Canon Drive, Suite 220
Beverly Hills, CA 90210

Phone: (310) 288-0110
Fax: (310) 807-4381

**THIS AMENDMENT CANCELS AND SUPERSEDES AMENDMENT DATED 3-3-15**

Mark Fishman
Escrow Officer

Date: March 4, 2015
Escrow No.: 500-007861-MF

AMENDED ESCROW INSTRUCTIONS

Property Address: 1169 N. Hillcrest Road, Beverly Hills, CA 90210

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS FOLLOWS:

(1) **BUYER'S VESTING:** Skyview Capital LLC, a California Limited Liability Company.

(2) **CLOSE OF ESCROW DATE:** Buyer and Seller herein agree and instruct Escrow Holder that the closing of this escrow is hereby amended to be on or before the following date: **April 6, 2015**

(3) **PROPERTY ADDRESS:** 1169 N. Hillcrest Road, Beverly Hills, CA 90210

(4) **LEGAL DESCRIPTION:** Lot 96 of Tract No. 21360, in the City of Beverly Hills, County of Los Angeles, State of California, as per Map recorded in Book 587, Pages 59 to 63 inclusive of Maps, in the Office of the County Recorder of said County.

(5) **INSPECTION CONTINGENCY REMOVAL:** Buyer hereby acknowledges completion and approval of all investigations and reports, and therefore all inspection contingencies shall be deemed satisfied and/or removed in their entirety.

(6) **RELEASE OF FUNDS:** Upon receipt of mutually executed Escrow Instructions, Escrow Holder is instructed to release the sum of **$665,400.00** to Seller, from funds deposited by Buyer. Escrow Holder will make such payment regardless of the condition of this escrow of the title to the property or personal property involved herein. Buyer and Seller agree to indemnify, save and hold Escrow Holder, Real Estate Broker and its Agents harmless in any way whatsoever in making such immediate payment to Seller. These instructions are made of Buyer and Seller's own free will, under no duress, with full understanding of the consequences, not relying on any information furnished or statements made by Escrow Holder as to the condition of this escrow, the title to the property and personal property involved and the ultimate outcome of the escrow or otherwise. It is understood and agreed by the parties herein that said funds shall apply towards the purchase price at the close of escrow. In the event this escrow is not closed, due to no fault of Seller, said released funds shall be considered **non-refundable**. All parties acknowledge that Escrow Holder, Real Estate Brokers and its Agents shall have no responsibility or liability in connection with the recovery of said funds should a dispute arise between Buyer and Seller.

SELLER'S INITIALS (________) BUYER'S INITIALS ( DS AS )

(7) **PRELIMINARY TITLE REPORT APPROVAL:** The undersigned Buyer hereby acknowledges receipt of the Preliminary Title Report No. **4654626** dated **2-9-15**, as issued by **First American Title Company.** Buyer hereby approves and accepts said Report and therefore the Preliminary

Title Report contingency is hereby removed and eliminated in its entirety. The Policy of Title Insurance, when issued, will show the following items: **1, 4, 5, 6, 7, 8 & 9.**

(8) **PROPERTY DISCLOSURE:** The undersigned parties hereby acknowledge receipt and approve in full of the mandatory property disclosure (including Natural Hazard Disclosure) issued by **Property ID.**

(9) **RECEIPT OF REQUIRED DOCUMENTATION:** Buyer and Seller hereby acknowledge that they have received all requested and/or required documents in this transaction and that any and all contingencies as set forth in this transaction have been satisfied and are therefore removed in their entirety. Escrow Holder is hereby instructed to proceed with the closing of this escrow.

**ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.**

**Sellers:**

1169 Hillcrest, LLC, a Nevada Limited Liability Company

By: ______________________________
Neil Moffitt, Authorized Signer

**Buyers:**

Skyview Capital LLC, a California Limited Liability Company

By: DocuSigned by: Alex Soltani
2FF501FB5A584DB...
Alex Soltani, Authorized Signer

DocuSign Envelope ID: DAA601FF-F352-415E-8DF1-8537E2B50A0E

439 N. Canon Drive, Suite 220
Beverly Hills, CA 90210

Phone: (310) 288-0110
Fax: (310) 807-4381

THIS AMENDMENT CANCELS AND SUPERSEDES AMENDMENT DATED 3-3-15

Mark Fishman
Escrow Officer

Date: March 4, 2015
Escrow No.: 500-007861-MF

AMENDED ESCROW INSTRUCTIONS

Property Address: 1169 N. Hillcrest Road, Beverly Hills, CA 90210

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS FOLLOWS:

(1) **BUYER'S VESTING:** Skyview Capital LLC, a California Limited Liability Company.

(2) **CLOSE OF ESCROW DATE:** Buyer and Seller herein agree and instruct Escrow Holder that the closing of this escrow is hereby amended to be on or before the following date: **April 6, 2015**

(3) **PROPERTY ADDRESS:** 1169 N. Hillcrest Road, Beverly Hills, CA 90210

(4) **LEGAL DESCRIPTION:** Lot 96 of Tract No. 21360, in the City of Beverly Hills, County of Los Angeles, State of California, as per Map recorded in Book 587, Pages 59 to 63 inclusive of Maps, in the Office of the County Recorder of said County.

(5) **INSPECTION CONTINGENCY REMOVAL:** Buyer hereby acknowledges completion and approval of all investigations and reports, and therefore all inspection contingencies shall be deemed satisfied and/or removed in their entirety.

(6) **RELEASE OF FUNDS:** Upon receipt of mutually executed Escrow Instructions, Escrow Holder is instructed to release the sum of **$665,400.00** to Seller, from funds deposited by Buyer. Escrow Holder will make such payment regardless of the condition of this escrow of the title to the property or personal property involved herein. Buyer and Seller agree to indemnify, save and hold Escrow Holder, Real Estate Broker and its Agents harmless in any way whatsoever in making such immediate payment to Seller. These instructions are made of Buyer and Seller's own free will, under no duress, with full understanding of the consequences, not relying on any information furnished or statements made by Escrow Holder as to the condition of this escrow, the title to the property and personal property involved and the ultimate outcome of the escrow or otherwise. It is understood and agreed by the parties herein that said funds shall apply towards the purchase price at the close of escrow. In the event this escrow is not closed, due to no fault of Seller, said released funds shall be considered **non-refundable**. All parties acknowledge that Escrow Holder, Real Estate Brokers and its Agents shall have no responsibility or liability in connection with the recovery of said funds should a dispute arise between Buyer and Seller.

**SELLER'S INITIALS** ( [signature] ) **BUYER'S INITIALS** ( ________ )

(7) **PRELIMINARY TITLE REPORT APPROVAL:** The undersigned Buyer hereby acknowledges receipt of the Preliminary Title Report No. **4654626** dated **2-9-15**, as issued by **First American Title Company.** Buyer hereby approves and accepts said Report and therefore the Preliminary

Date: March 4, 2015

Escrow No.: 500-007861-MF

Title Report contingency is hereby removed and eliminated in its entirety. The Policy of Title Insurance, when issued, will show the following items: 1, 4, 5, 6, 7, 8 & 9.

(8) **PROPERTY DISCLOSURE:** The undersigned parties hereby acknowledge receipt and approve in full of the mandatory property disclosure (including Natural Hazard Disclosure) issued by Property ID.

(9) **RECEIPT OF REQUIRED DOCUMENTATION:** Buyer and Seller hereby acknowledge that they have received all requested and/or required documents in this transaction and that any and all contingencies as set forth in this transaction have been satisfied and are therefore removed in their entirety. Escrow Holder is hereby instructed to proceed with the closing of this escrow.

**ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.**

**Sellers:**

1169 Hillcrest, LLC, a Nevada Limited Liability Company

DocuSigned by:

By: ______________________
Neil Moffitt, Authorized Signer

**Buyers:**

Skyview Capital LLC, a California Limited Liability Company

By: ______________________
Alex Soltani, Authorized Signer